# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 49980

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Boise, November 2022 Term** |
| | ) | |
| **v.** | ) | **Opinion filed: March 10, 2023** |
| | ) | |
| **TRAVIS RAY LEAVITT** | ) | **Melanie Gagnepain, Clerk** |
| | ) | |
| **Defendant-Appellant.** | ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Custer County. Stevan H. Thompson, District Judge.

The judgment of the district court is <u>vacated and remanded</u>.

Eric Don Fredericksen, State Appellate Public Defender, Boise, for Appellant. Jason Pintler argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent. Kale Gans argued.

_____

MOELLER, Justice.

This appeal concerns Idaho Rule of Evidence Rule 404(b), which governs the admissibility of evidence concerning a defendant's prior bad acts. Following a jury trial, Travis Ray Leavitt was convicted of the statutory rape of a 17-year-old girl. He was 34 years old at the time of the incident. After the trial had commenced, the State disclosed new evidence regarding Leavitt's past criminal record, which the district court admitted. Leavitt challenges his conviction on the basis that the court allowed impermissible propensity evidence to be presented to the jury, including evidence of his criminal sexual history. Additionally, Leavitt asserts that even if the admission of such evidence were proper under Rule 404(b), the State failed to show good cause for its late disclosure of the evidence disclosed after trial began and evidence that he was a felon and a sex offender should have been barred as unfairly prejudicial under Rule 403.

Leavitt's appeal was initially heard by the Idaho Court of Appeals, which vacated his conviction and remanded the case for a new trial in an unpublished decision. This Court granted

the State's petition for review of the Court of Appeals' decision. For the reasons stated below, we reach a similar result but employ a different analysis.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

The events of this case all occurred in the spring of 2019 at a ranch near Challis, Idaho. Travis Leavitt, who had recently been released from prison, was hired as a ranch hand. The manager of the ranch lived there with his family, including A.M., his minor daughter. A.M. worked on the ranch for her father and raised 4-H animals for competition. In May 2019, while working on a chicken coop door with her father, A.M., then 17 years old, first met Leavitt, who was 34 years old.

While A.M. characterized her initial interactions with Leavitt as just friendly, R.S., A.M.'s best friend, testified that "it started off as just a friend talking to a friend. It wasn't like a man talking down to a child. It's like they were equals. And then over time it progressed to where he was trying to, I guess, play the boyfriend role." R.S. noted that she had overheard "a couple of conversations where he had tried to ask her about the possibility of them sleeping together or hanging out by themselves."

These interactions between Leavitt and A.M. continued with regularity from the initial meeting in May until June 17, 2019. A.M. testified that around 5:00 PM that day she was in the ranch shop alone, getting string for her weed trimmer when Leavitt entered the shop. A.M. testified that she then had a non-consensual sexual encounter with Leavitt. R.S. testified: "[A.M.] had told me, which is almost a week after the incident, I think – – she had told me that her [sic] and Travis had slept together. It was – – it started off consensual, but then she changed her mind, and it happened anyways." R.S. further testified that she told her mother what A.M. had told her. R.S.'s mother then reported the incident to the police. When interviewed by the police, A.M. initially denied she had sexual contact with Leavitt. However, A.M. later acknowledged what had happened, detailed the facts of the sexual encounter, and stated he continued to have sex with her even after she told him to stop.

The State initially filed a complaint against Leavitt alleging that he forcibly raped A.M. and that he is a persistent violator. Following A.M.'s testimony at the preliminary hearing, the State amended its allegations to assert, alternatively, that Leavitt committed rape based on the age difference between him and A.M as defined in Idaho Code section 18-6101(2). At the conclusion

2

of the preliminary hearing, the magistrate court found probable cause for the statutory rape charge based on the disparity in A.M. and Leavitt's ages. Leavitt was bound over to the district court where he pleaded not guilty. The case proceeded to trial on January 15, 2020.

## B. The Trial Court's 404(b) Rulings

The State was represented at trial by Justin Oleson, prosecuting attorney for Custer County. The day before the trial started, the prosecutor filed notice of the State's intent to introduce testimony concerning prior bad acts evidence pursuant to Rule 404(b)—including testimony that indicated that Leavitt was a felon. Oleson later filed a similar notice on the second day of trial for additional 404(b) evidence—including testimony that Leavitt had stated he was a sex offender. Leavitt objected to the admission of both statements on the basis of insufficient notice by the State under Rule 404(b)(2)(B).

The first group of statements was anticipated testimony from A.M. that Leavitt told her two things: "[o]ne is that he had a hit list, and, two, that he said he didn't – – he wasn't going back to prison." In addition to the lack of a timely notice objection, Leavitt's counsel argued that it "would be unduly prejudicial to my client to allow the statement in that he wasn't going *back* to prison." (Emphasis added). To resolve the issue, the district court decided to "sanitiz[e] the statement" and remove any indication from A.M.'s testimony that Leavitt had been to prison previously. Specifically, the district court ruled:

> I, guess I'm going to require that you delete the word "back" from her statement When she testifies. And she can testify to everything she recalled, but she'd be instructed to simply testify if it's true that he made the statement, I'm not going to go to prison, rather than "back to prison." And so she'll need to be instructed carefully what that is.

On the second day of trial, a new disclosure by the prosecution brought additional evidence under Rule 404 scrutiny. The prosecution began the second day of trial by informing the court that:

> [Oleson]: In speaking with witnesses, preparing for their testimony for today, some new information came out, which I was not aware of before. But, essentially, the witnesses would testify that – – the court heard a little bit yesterday about an issue with [R.S.] telling [the forensic interviewer] about how she felt uncomfortable going into – – when they were packing pig feed and that Mr. Leavitt had made some comment that made her feel uncomfortable. And she talked about that.
>
> So when I was exploring that with the witnesses, apparently what had happened – – a couple of days before – – or a week before the pig incident, Mr. Leavitt was with [A.M.] and [her father] when they were working on a chicken coop. And Mr. Leavitt had – – was over there helping, had came [sic] over to help fix, I guess, a

3

door on a chicken coop, and made a comment about how he wasn't able to have a firearm because he was a felon.

And so then we get a few days later when they're in the chicken coop – – or in the pigpen. And [R.S.] is there, and [A.M.] is there. And Mr. Leavitt is helping pack the pig feed. And, apparently, he was bragging to both of these girls how he had spent 12 years in prison, talked about how he got addicted to drugs while he was in prison, and he mentioned that he was a sex offender, and that's why he'd been to prison. He also had shut the door on [R.S.] during this time, so [R.S.] was feeling uncomfortable. Mr. Leavitt had shut the door in this dark little room when they were putting the feed in and made some comment about how it was – – anyway[.]

After the State explained who specifically would be testifying and to what, the district court inquired about the purpose, other than for propensity, this evidence was being offered. The State responded by arguing it was not for propensity; rather, it was offered to establish a common scheme or plan:

[Oleson]: Well, it's not the propensity for him to commit the offense, Your Honor. But it shows the common scheme or plan. It corroborates the rest of the testimony. I mean, these are admissions that he made to not just one – – not just our victim, but also statements that he made to the victim's best friend, who's another minor, statements that he made to her father. I mean, these are admissions that he made. And this is – –

So we've got two separate issues of evidence. We have the statements that he made, which are clearly admissible. And then we have the prior convictions. And the prior convictions should be admissible because those tie [into] his behavior and corroborates the statements he made to the witnesses.

And so this is all common scheme or plan. It's not just that he committed this crime because of his priors, but this flows in with the grooming behavior, the seven factors that we listened to from the two witnesses that testified yesterday. It all fits in. And it's consistent with many of the cases, including [*State v. Grist*]. *Grist*, Your Honor, was uncharged conduct.

The evidence disclosed by the State on the second day of trial was also met with an objection based on the late notice. This evidence consisted of anticipated testimony from R.S. that Leavitt told her and A.M. he was a sex offender. In addition to the late disclosure, Leavitt also objected to the purpose for which the evidence of the prior sexual offenses was being offered. Leavitt further objected, arguing that admission of the evidence would be unfairly prejudicial and it should be excluded under Rule 403. The district court permitted the evidence, explaining:

The testimony that's being offered by the [S]tate I do feel has some probative value. I think that, as indicated under the *Grist* case, the court still found that where relevant to the credibility of the parties, evidence of common criminal design is admissible. And so under 404(b), basically saying, still, if I find it's being offered

4

for some purpose other than propensity, that it still may be allowed. I just have very cautionary language in that decision to not interpret that too broadly and to simply allow this type of evidence in in every situation.

But here we do have evidence that's been presented regarding grooming behavior. And the jury's entitled to have some context to that grooming-behavior theory. And I think that this testimony provides that context and explains what kind of grooming behavior may or may not have been happening, based upon the testimony that would be presented by the victim and by [R.S.] and by the victim's family.

The court initially makes a finding – – I think there's reasonable likelihood that those – – I'm not saying that the statements are true and that they actually happened. I just have to make a finding that there's reasonable likelihood that those statements occurred. In that first tier of the analysis, I do make that finding, that there's sufficient reliability or, I guess, indicia that those statements may have occurred, that I think that they should be allowed.

Under the second tier of that evaluation, I'm going to find that they should be admitted under 404(b). I think they fall under this theory of grooming and plan. And, as in the *Grist* case, the idea of the common criminal design, whether you call it modus operandi or plan and design, I believe that they should be admitted.

In addition to the 404(b) ruling, the district court addressed legal relevance by applying the Rule 403 balancing test and concluded that "the prejudicial effect of this [evidence] does not substantially outweigh the probative value."

Finally, as to the notice objection raised regarding the evidence disclosed on the second day, the district court allowed the evidence notwithstanding the late notice. The district court explained:

There is a requirement under Rule 404(b), a reasonable notice. But the court – – in my view that contemplates reasonable notice of the state intending to present evidence that's maybe outside the scope of within the evidence or the – – kind of the res gestae, I guess, might consider – – of this case, that outside what the testimony would have been presented in this case from the victim, from the fact witnesses, information that was disclosed in discovery regarding witness statements and so forth, that 404(b) kind of contemplates in that notice requirement that if they're going to present something outside of that, other events unrelated to this event, that there's requirement of reasonable notice, that you can be aware of that and confront it.

In this situation the court assumes that discovery has been completed, that counsel's aware of who all these witnesses were that's been identified by the state, and had some idea of what their testimony would be. And so maybe that notice requirement is not as urgent. And the court still has the ability under 404(b) to find that there's reason to excuse that notice requirement.

5

And so I do find in this circumstance and the offer of proof *that there's not necessarily an unfair prejudice* by the late notice, I guess, coming up here in the trial, as to these potential witnesses' testimony, because they're witnesses within the case, testifying to facts that happened regarding this case and these events, not some other situation unknown to the defendant. So I'm not going to disallow it because of the notice objection that was made.

(Emphasis added).

Thus, in summarizing the district court's Rule 404(b) rulings, it held that the first group of statements would be admissible after they were "sanitized" by deleting the word "back" from the phrase "back to prison." As to the second group of statements regarding prior sex offenses, the district court concluded that they would be allowed in full because (1) there was no unfair prejudice under Rule 403, (2) the evidence was admissible as proof of a common plan under Rule 404(b), and (3) there was "not necessarily an unfair prejudice [to the defense] by the late notice" under Rule 404(b)(2)(B).

At the conclusion of the trial, the jury convicted Leavitt of statutory rape. He was later sentenced to a unified sentence of 25 years, with 15 years fixed and a ten-year indeterminate period to follow. On appeal, the Idaho Court of Appeals vacated Leavitt's conviction. The State then sought review of the Court of Appeals decision by this Court, which was granted.

## II. STANDARD OF REVIEW

"In cases that come before this Court on a petition for review of a Court of Appeals decision, this Court gives serious consideration to the views of the Court of Appeals, but directly reviews the decision of the lower court." *State v. Vivian*, 171 Idaho 79, __, 518 P.3d 378, 381 (2022) (quoting *State v. Purdum*, 147 Idaho 206, 207, 207 P.3d 182, 183 (2009)).

"Whether evidence is relevant is a question of law and is subject to de novo review." *State v. Ochoa*, 169 Idaho 903, 912, 505 P.3d 689, 698 (2022) (citing *State v. Raudebaugh*, 124 Idaho 758, 764, 864 P.2d 596, 602 (1993)). "[A] district court's admission of evidence under I.R.E. 404(b) is reviewed according to an abuse of discretion standard." *State v. Anderson*, 168 Idaho 758, 766, 487 P.3d 350, 358 (2021) (citing *State v. Grist*, 147 Idaho 49, 51, 205 P.3d 1185, 1187 (2009)); *see also Ochoa*, 169 Idaho at 912, 505 P.3d at 698 ("The trial court's broad discretion as to the admission and exclusion of evidence will only be reversed when there is a clear abuse of discretion."). Under that standard, this Court reviews four elements, "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices

6

available to it; and (4) reached its decision by the exercise of reason." *State v. Villa-Guzman*, 166 Idaho 382, 384, 458 P.3d 960, 962 (2020) (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)).

"Admissibility of evidence of other crimes, wrongs, or acts when offered for a permitted purpose is subject to a two-tiered analysis. First, the trial court must determine whether there is sufficient evidence to establish the other crime or wrong as fact." *Grist*, 147 Idaho at 52, 205 P.3d at 1188 (citing M. Clark, Report of the Idaho State Bar Evidence Committee, C 404, p. 4 (4th Supp. 1985)). The trial court must also determine the relevancy of the crime or other act evidence. *Id.* "Evidence of uncharged misconduct must be relevant to a material and disputed issue concerning the crime charged, other than propensity. *Grist*, 147 Idaho at 52, 205 P.3d at 1188 (citing *Field*, 144 Idaho at 569, 165 P.3d at 283). Second, the trial court must evaluate the evidence under the Rule 403 balancing test to determine "whether the danger of unfair prejudice substantially outweighs the probative value of the evidence." *Id.*

### III. ANALYSIS

**A. The district court abused its discretion by failing to articulate any factual basis for determining that "good cause" was shown for the State's failure to disclose highly prejudicial Rule 404(b) evidence until the second day of trial.**

As discussed above, there were two groups of statements that implicated 404(b) evidence that were disclosed by the State—one group shortly before trial and another after trial began. On the eve of trial, the prosecution disclosed Levitt's statements about his prior felony history—namely, that Leavitt had a "hit list," that he "couldn't own a gun because he was a felon," and that he was "not going back to prison." While disclosed on the eve of trial, this evidence was discussed on the first day of trial. At that time, Leavitt objected under Rule 404(b)(2)(B) for insufficient notice. After the trial began, specifically on the second day of trial, the prosecution informed the district court and Leavitt of additional testimony which included reference to Leavitt's status as a sex offender that the State intended to offer. Leavitt again objected to this new evidence under Rule 404(b)(2)(B) for insufficient notice.

On appeal, Leavitt's point of error regarding insufficient notice under 404(b)(2)(B) focuses on the testimony referencing Leavitt's sex offender history and the lack of good cause found by the district court. Leavitt does not appear to separately argue on appeal that the felony history statements disclosed on the eve of trial run afoul of Rule 404(b)(2)(B). Thus, our review of whether

the State provided deficient notice under Rule 404(b)(2)(B) is limited to the evidence disclosed on the second day—namely, testimony that indicated that Leavitt was a sex offender.

Idaho Rule of Evidence 404(b)(2) concerns evidence of a defendant's prior bad acts and requires that in a criminal case, the State must "(A) file and serve reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and (B) do so *reasonably in advance* of trial – *or during trial if the court, for good cause shown*, excuses lack of pretrial notice." I.R.E. 404(b)(2) (emphasis added). This Court has held that compliance with the notice requirement of Rule 404(b) "is mandatory and a condition precedent to admission of other acts evidence." *State v. Sheldon*, 145 Idaho 225, 230, 178 P.3d 28, 33 (2008); *see also State v. Whitaker*, 152 Idaho 945, 950, 277 P.3d 392, 397 (Ct. App. 2012) ("This notice requirement is mandatory, and the failure to comply creates a bar to admissibility.").

While Rule 404(b) requires a finding of good cause for a disclosure made after trial, the district court made no such finding. Instead, the district court appears to have analyzed the late notice issue by using the Rule 403 standard for "unfair prejudice." However, Rule 404(b) does not contain an "unfair prejudice" standard; rather, it requires that lack of reasonable pretrial notice can only be excused "*for good cause shown*." (Emphasis added). Thus, the inquiry for a late disclosure is not whether the defendant has established unfair prejudice if the evidence is admitted, but rather whether the State has shown good cause for the late disclosure.

At oral argument before this Court, the State argued that prejudice was an appropriate consideration for the district court and urged this Court to adopt a "sliding scale" of prejudice and good cause. The State advanced the novel theory that the level of prejudice should affect the level of good cause required—i.e., the greater the prejudice, the greater the good cause that must be shown. However, such an approach stands in contrast of the rule itself. Good cause is the threshold requirement that the trial court must find *before* it excuses the late notice and applies its discretion to determine whether (1) the evidence is offered for a "permitted use" identified in Rule 404(b) (i.e., motive, opportunity, etc.) and (2) the evidence is not unfairly prejudicial under Rule 403. Absent good cause for the late disclosure being shown by the prosecution, the trial court has no discretion to admit the proffered Rule 404(b) evidence. Further, the State has not proffered any authority for applying a Rule 403 balancing test to the good cause analysis in Rule 404(b)(2)(B), nor has it shown that any other jurisdiction has applied a sliding scale of good cause to Rule 404(b)(2)(B) in such a manner.

The plain language of Rule 404(b) only requires good cause for the delay in the disclosure, but that level of good cause is not enhanced or lessened by possible prejudice to the defendant. The rule encourages disclosure by the prosecution and discourages trial by ambush. The State must have a good explanation for failing to comply with the rule regardless of the level of prejudice. If there is a question of unfair prejudice after a finding of good cause, either from the delay or due to the nature of the evidence itself, such concerns must be evaluated separately under Rule 403, which balances the probative value of proffered evidence against the risk of unfair prejudice. *See State v. Grist*, 147 Idaho 49, 52, 205 P.3d 1185, 1188 (2009) (applying the two-tier analysis consisting first of requirements for Rule 404(b) and then second Rule 403); *State v. Johnson*, 148 Idaho 664, 667, 227 P.3d 918, 921 (2010) (citing *State v. Cross*, 132 Idaho 667, 670, 978 P.2d 227, 230 (1999)).

While it is difficult to define good cause in a comprehensive way that would cover every circumstance that could possibly occur, in this case an all-purpose definition is not needed because the district court failed to articulate *any* basis for the late disclosure. Looking to the record, it is not even clear that good cause could be found. The record does not show when the State learned of this new testimony, why this was not discovered sooner, or whether any of the State's witnesses had been previously questioned on these topics. The prosecutor stated on the second day of trial: "[i]n speaking with witnesses, preparing for their testimony for today, some new information came out, which I was not aware of before." It is not clear what the prosecutor meant by "preparing for their testimony today"—if he was speaking to the witness on the first day of trial, the second day of trial, or some other day in preparation for that day's testimony. From the record, the possibility of a lack of diligence in investigating and preparing the case is just as likely an explanation for the late disclosure as is the possibility the victim withheld this information until the last moment. Obviously, the circumstances of how the prosecutor discovered such critical information, which was only provided to the defense at the eleventh hour, greatly affects whether there was good cause for the late disclosure. As an essential inquiry into the State's proffered reasons for the delayed disclosure, the trial court must determine what the specific facts and circumstances are that caused the State to disclose its intent to present the 404(b) evidence *at that point in time*. Such facts and circumstances can be the difference between good cause, negligent prosecutorial preparation, and intentional sandbagging. At a minimum, good cause requires a trial court to properly consider all

the relevant facts and circumstances for the late disclosure by the State and exercise its reasoned discretion.

It is the State's burden to establish good cause for the delayed notice. Once the court finds good cause for the delayed disclosure, it can then turn to analyzing any argument by the Defendant concerning unfair prejudice that might result from the admission of the contested evidence. Recognizing the mandatory nature of Rule 404(b), and that it sets a condition precedent to admission of prior bad acts, the district court erred by (1) not requiring the State to make a showing of good cause *and* (2) not making a finding of good cause for the delayed notice. Accordingly, the judgment of conviction must be vacated, and this case remanded for a new trial.

Even though the lack of good cause for the late disclosure of the Rule 404(b) evidence is dispositive in this case, there are other issues argued on appeal by the defendant that we will address because, on remand, the State will presumably be able to make a timely disclosure of the same evidence at issue in this appeal. Accordingly, to avoid successive appeals and allow for a more timely resolution of this matter, we will turn to the question of whether the district court erred in admitting this evidence under Rule 404(b) and Rule 403.

**B. Evidence of Leavitt's prior criminal sexual offenses was not offered for a proper non-propensity purpose, as required by Rule 404(b).**

At trial, the State argued that the evidence of Leavitt's disclosure of prior sex offenses would not be offered to prove "the propensity for [Leavitt] to commit the offense. . . . But it shows the common scheme or plan." On appeal, the State additionally argues that "this evidence was highly relevant to show A.M. was a credible witness, to explain her delayed disclosure, to rebut Leavitt's claims that she was a liar, and to show that Leavitt was grooming her." For the reasons set forth below, we conclude that the State's proposed "non-propensity" purposes for admitting evidence of Leavitt's prior sexual offenses, as asserted both at trial and on appeal, fail as a matter of law.

**1. The State's argument of a common scheme or plan fails in light of the lack of a factual connection between the events and the crime.**

"The general tenets of evidence typically forbid the admission of a defendant's prior misconduct, if the evidence is offered to prove that the defendant possessed a particular character trait and that the defendant acted in conformity with that trait." *State v. Porter*, 130 Idaho 772, 783, 948 P.2d 127, 138 (1997) (citing I.R.E. 404(b); *State v. Moore*, 120 Idaho 743, 745, 819 P.2d 1143, 1145 (1991); and *State v. Needs*, 99 Idaho 883, 892, 591 P.2d 130, 139 (1979)); *see also*

*McKinney v. Rees*, 993 F.2d 1378, 1380 (9th Cir. 1993), *as amended* (June 10, 1993) (reviewing the historical common law basis for the prohibition of propensity evidence) ("The rule against using character evidence to show behavior in conformance therewith, or propensity, is one such historically grounded rule of evidence. It has persisted since at least 1684 to the present, and is now established not only in the California and federal evidence rules, but in the evidence rules of thirty-seven other states and in the common-law precedents of the remaining twelve states and the District of Columbia.").

In *State v. Grist*, this Court reiterated "that such evidence [of prior bad acts] may be admissible 'if relevant to prove ... a common scheme or plan embracing the commission of two or more crimes *so related to each other* that proof of one tends to establish the other, knowledge, identity, or absence of mistake or accident.' " 147 Idaho 49, 54–55, 205 P.3d 1185, 1190–91 (2009) (citing *State v. Pizzuto*, 119 Idaho 742, 750–51, 810 P.2d 680, 688–89 (1991)) (emphasis in original). However, this Court cautioned against expansive use based on superficial points in common: "We once again caution the trial courts of this state that they must carefully examine evidence offered for the purpose of demonstrating the existence of a common scheme or plan in order [to] determine whether the *requisite relationship exists*." *Grist*, 147 Idaho at 55, 205 P.3d at 1191 (emphasis added).[1]

As this Court has stated, "[e]vidence of prior misconduct is relevant *on the issue of identity* when the evidence demonstrates sufficiently similar, as well as *distinctive, characteristics or patterns* between the prior misconduct and the charged crime." *State v. Porter*, 130 Idaho 772, 783, 948 P.2d 127, 138 (1997) (emphasis added) (citing Imwinkelried, UNCHARGED MISCONDUCT EVIDENCE §§ 3:11–12 (1996) and *United States v. Powell*, 587 F.2d 443, 448 (9th Cir.1978)). Importantly, as the 8th Circuit recognized previously, and consistent with this Court's analysis in *Porter*, "[n]ormally, this type of evidence is *offered to prove identity* in cases where it is clear that a crime has been committed and the issue is whether [the] defendant committed it." *United States v. LeCompte*, 99 F.3d 274, 278 (8th Cir. 1996) (prior to adoption of Federal Rules 412-413)

---

[1] The long-standing principle in the federal system, prior to Rules 412-413, is consistent with Idaho's precedent of requiring a relationship between the charged conduct and the other act evidence. Prior to the congressional enactment in 1994 amending the rules of evidence to allow sexual propensity evidence, at least two circuits had expressed that "prior sex offenses committed upon the victim of the charged offense" are usually admissible, but "[w]e are far more hesitant to affirm the admission of evidence of prior sexual acts or crimes committed against persons other than the victim of the charged offense." *United States v. LeCompte*, 99 F.3d 274, 277 (8th Cir. 1996) (discussing a common plan, scheme, and modus operandi) (citing *United States v. Yellow*, 18 F.3d 1438, 1440 & n. 2 (8th Cir.1994)).

(emphasis added); *see also State v. Porter*, 130 Idaho 772, 783, 948 P.2d 127, 138 (1997) ("Evidence of such misconduct, however, may be admissible when relevant to a material and disputed issue regarding the crime charged, *such as establishing a modus operandi in order to prove the identity* of the defendant as the perpetrator of the crime charged.") (emphasis added). Here, as in *LeCompte*, "[i]n this case, identity is not at issue." *Id.*

In its briefing, the State seems to assert that grooming behavior establishes the common scheme or plan. Similarly, the State quotes *State v. Nava*, 166 Idaho 884, 893, 465 P.3d 1123, 1132 (2020), for the proposition that: "evidence of uncharged misconduct may be probative as reflecting a common scheme or plan or to otherwise corroborate the testimony of a witness." *Nava*, 166 Idaho at 893, 465 P.3d at 1132. The State, however, reads this Court's holding in *Nava* too broadly. As a threshold matter, *Nava* concerned two victims and a motion to sever the two charges. *Nava*, 166 Idaho at 886–87, 465 P.3d at 1125–26. The evidence at issue in *Nava* was grooming behavior that was similar to both victims: the victims were cousins of the same age and the assaults of both victims took place in the same manner over consecutive nights at the same house. Thus, in *Nava* the evidence of grooming of one of the victims had the requisite relationship with the grooming behavior of the other victim to establish a common scheme or plan embracing the commission of two crimes that were *closely related to each other*. On the other hand, the evidence in this case concerns alleged grooming behavior in two separate and unrelated crimes involving victims of different ages (16 and 4 years old), separated by 15 years or more from the crime at issue.

Here, in ruling on the admissibility of the evidence, the district court concluded: "I think they fall under this theory of grooming and a plan. And, as in the *Grist* case, the idea of the common criminal design, whether you call it modus operandi or plan and design, I believe they should be admitted." However, there is scant evidence in the record, and no analysis by the trial court, showing a connection between the victim's grooming and any alleged grooming of the other victims. For example, the case at bar concerns a 34-year-old defendant attempting to lure a 17-year-old girl to a sexual encounter after, according to the State, a significant period of targeted grooming. However, the record shows that Leavitt's two prior sex offenses were different. Leavitt's initial offense occurred when he was still a minor and involved the abuse of a four-year-old. Leavitt's second offense occurred at age 19 and involved his 16-year-old girlfriend. Although the victim in the second case was just a year younger than in this case, there is a world of difference between how a 34-year-old man and a 17-year-old girl interact and how two teenagers in a

boyfriend/girlfriend relationship might interact. While Leavitt's criminal history evidences a troubling past and may demonstrate a propensity for such misconduct—both improper grounds for admitting the evidence—there is no indication that these earlier cases involved the same type of grooming behavior exhibited in this case or bore any other factual similarity to the case at hand. There is little evidence in the record showing the details in either of Leavitt's prior convictions to establish a common scheme or plan. Thus, no relationship between Leavitt's past conduct and the crime charged can be established to a degree where the proof of one tends to establish the other. Further, identity is not at issue in this case; thus, any actual similarities between this case and the prior offenses would be unnecessary to prove the defendant committed the alleged crime.

In sum, the use of this type of evidence to prove Leavitt has committed a similar crime in the past is the very definition of propensity evidence and is squarely prohibited by Rule 404. Accordingly, we hold that the district court erred when it admitted the evidence of Leavitt's criminal sexual history as proof of a common scheme, plan, or modus operandi.

### 2. Evidence of Leavitt's prior sexual offenses does not bolster the victim's credibility because A.M. testified she did not remember Leavitt telling her why he was a felon

The other purpose for admitting such evidence, first proffered on appeal by the State, is that this evidence supports the victim's and other witnesses' credibility—both to explain the victim's delayed disclosure and to rebut Leavitt's assertion that the victim lied. Although we do not typically address theories of admissibility that were directly raised for the first time on appeal,[2] we have opted to address them here to provide guidance on remand.

We first address the State's argument that A.M.'s knowledge of Leavitt's prior sexual offenses bolsters A.M.'s credibility in that it explains the grooming behavior. In *State v. Grist*, the State argued that the defendant's prior acts of uncharged sexual misconduct corroborated the victim's testimony. *Grist*, 147 Idaho at 53, 205 P.3d at 1189. This Court recognized that this was a "legitimate argument under *Moore* and its progeny." However, this Court emphasized that evidence offered for the purpose of "corroboration" must actually serve that purpose; the courts of this state must not permit the introduction of impermissible propensity evidence merely by

---

[2] At trial, the district court briefly mentioned credibility, possibly as an alternate basis for its ruling, when discussing admission of the evidence under the Rule 404(b): "The testimony that's being offered by the [S]tate I do feel has some probative value. I think that, as indicated under the *Grist* case, the court still found [sic] that where relevant to the credibility of the parties, evidence of common criminal design is admissible." This was likely in response to the prosecutor's statement that although the evidence was offered to show a common scheme or plan, it also "corroborates the rest of the testimony."

13

relabeling it as "corroborative" or as evidence of a "common scheme or plan." *Grist*, 147 Idaho at 53–54, 205 P.3d at 1189–90. Importantly, in *Grist*, this Court reiterated that *Moore* correctly stated: "Where relevant to the credibility of the parties, evidence of a common criminal design is admissible." *Grist*, 147 Idaho at 54, 205 P.3d at 1190 (citing *Moore*, 120 Idaho at 746, 819 P.2d at 1146). While this Court in *Grist* did not identify all instances in which such evidence may be admitted, we did "identify the instance in which such evidence may not be admitted: Evidence of uncharged misconduct may not be admitted pursuant to I.R.E. 404(b) when its probative value is entirely dependent upon its tendency to demonstrate the defendant's propensity to engage in such behavior." *Grist*, 147 Idaho at 54, 205 P.3d at 1190.

The State asserts that evidence that A.M. knew Leavitt was a sex offender explains the grooming behavior, bolsters A.M.'s credibility, and rebuts an attack on A.M.'s credibility. Specifically, at trial, the State offered evidence *from R.S.* that Leavitt told her and A.M. he was a sex offender. However, there was no comparable testimony *from A.M.* that Leavitt told her he was a sex offender. In fact, A.M. testified to the contrary—or at best, that she was unaware that such a statement was made. When asked about the same encounter where R.S. testified that Leavitt stated he was a sex offender, the prosecutor asked A.M. if she knew "why [Leavitt had] been to prison? Did he say anything?" A.M. responded: "Not that I can remember of, no." Since the district court admitted the disputed evidence, in part, based on the effect on the listener, it is important to stress who the listener is—A.M., not R.S. Thus, the State mistakenly attempts to relabel R.S.'s testimony as corroborative when, in fact, it is inconsistent with the testimony of A.M.

A.M., R.S., R.S.'s mother, and A.M.'s father all testified to having a meeting about Leavitt, performing an internet search on Leavitt's name, and discovering, together, information about his prior criminal sexual history. Thus, the testimony from the trial indicates that A.M. did not learn of Leavitt's sex offender status from Leavitt. There is no testimony from A.M. that she and Leavitt ever discussed his sex offender status. While the testimony does indicate that A.M. was aware he had a criminal history, it cannot fit into the state's theory that this knowledge was used as part of Leavitt's grooming of A.M. since A.M.'s testimony was that she learned of Leavitt's sex offender status *at the family meeting*, and *not from Leavitt*. Thus, R.S.'s testimony that Leavitt stated he was a sex offender does not bolster A.M.'s general credibility or rebut any allegation that A.M. was lying. Since the source of A.M.'s knowledge of Leavitt's sex offender status does not fit with the State's theory of grooming based on the testimony offered at trial, and it does not bolster A.M.'s

14

testimony, the probative value of R.S.'s testimony that Leavitt said he was a sex offender was entirely dependent upon its tendency to demonstrate the defendant's propensity to engage in such behavior. Accordingly, we conclude that the evidence of Leavitt's prior criminal sexual history was improperly admitted.

> **3. Evidence of Leavitt's prior sexual offenses does not explain A.M.'s delayed disclosure because A.M. testified she did not remember Leavitt telling her why he was a felon.**

We next turn to the State's assertion that Leavitt's disclosure of his prior sex offenses explains A.M.'s delayed disclosure of the crime. The State asserts that the testimony that Leavitt was a sex offender helps explain her delayed disclosure and why A.M. initially denied that there was a sexual encounter. However, specifically referencing the sex offender statements, Leavitt argues that "[e]ven if the State can now somehow shoehorn Mr. Leavitt's purported statements into one of [the expert witness's] seven stages of grooming, logic dictates those statements can only be relevant if A.M. was the one to hear them." Leavitt correctly notes that the "[t]estimony from R.S. [was] that *she* heard Mr. Leavitt say he was a convicted sex offender." (Emphasis in original). While A.M. did testify "that as sort of bragging [Leavitt said he] couldn't own a gun because he had been a felon and just recently got out of prison," there is no testimony that A.M. was told by Leavitt that he was a convicted sex offender.

As noted, R.S. testified that Leavitt told both her and A.M. that he was a sex offender. Importantly, however, A.M. did not remember Leavitt saying why he had been to prison. *See supra*. For statements regarding Leavitt's prior sex offenses to be relevant to explain A.M.'s delay in disclosure, there would need to be evidence that she actually heard the statements. Because the record does not support this conclusion, the alleged statements were inadmissible.

> **C. Leavitt's other statements referencing prison and a "hit list" were offered for a proper non-propensity purpose under Rule 404(b) in that it explains A.M.'s delayed disclosure.**

While Leavitt's point of error regarding notice under Rule 404(b)(2)(B) was limited to the sex offender testimony disclosed on the second day, Leavitt argues that statements where Leavitt indicates he was a "felon" and "not going back to prison" were impermissible character evidence prohibited by Rule 404(b). The State disagrees, arguing that the statements were offered for a non-propensity purpose. Specifically, the State's asserts that Leavitt's statements that he was a "felon" and "not going back to prison" explain A.M.'s delayed disclosure of the crime. A.M. testified that

15

she initially denied that the sexual encounter occurred because "Mr. Leavitt had made threats toward people [she] cared about." She also testified she was scared. A.M. testified that Leavitt "said he had a hit list and that he would not be going back to prison." In its brief, the State argues that "Leavitt's threats to [A.M.'s] friends and family, amplified by his hint-dropping about his criminal history, understandably cause A.M. to initially deny what happened out of fear." We find these arguments by the State to be persuasive.

We agree with the State that there is a difference between being told that one has a "hit list" and is "not going back to prison," and knowing that those statements come from someone who has previously disclosed that they are a felon. Thus, the testimony by A.M. that Leavitt stated (1) he had a "hit list," (2) he "couldn't own a gun because he was a felon," and (3) he was "not going back to prison," all lend credence to A.M.'s delay in her disclosure under the facts of this case. R.S.'s testimony that she heard such statements when they were made to A.M. further bolster A.M.'s credibility. Therefore, these statements were admissible for the non-propensity purpose of explaining A.M.'s delayed disclosure and her initial denial of the sexual encounter—provided they pass a separate Rule 403 balancing analysis on remand, as discussed below.

### D. The district court abused its discretion when it found that the probative value of Leavitt's prior criminal sexual offenses was not substantially outweighed by a danger of unfair prejudice under Rule 403.

Idaho Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ." A careful analysis of unfair prejudice is essential when ruling on character evidence because "[t]he prejudicial effect of [character evidence] is that it induces the jury to believe the accused is more likely to have committed the crime on trial because he is a man of criminal character." *Grist*, 147 Idaho at 52, 205 P.3d at 1188 (quoting *State v. Wrenn*, 99 Idaho 506, 510, 584 P.2d 1231, 1235 (1978)). In other words, character evidence almost always carries with it some risk that it may be impermissibly used to show propensity. Thus, care should be taken so that the admission of such evidence does not divert jurors from their fundamental role in determining whether the defendant was guilty of the particular crime charged.

As discussed above, the State has not offered a valid non-propensity purpose for the evidence of Leavitt's criminal sexual history. However, based on the nature of this evidence, even if the State proffered a valid non-propensity purpose of introducing Leavitt's history of sex offenses under Rule 404(b), we conclude that the prejudicial effect of such evidence is so

16

substantial that there is a high likelihood that the jury would believe that Leavitt committed the crime due solely to his record as a sex offender. In weighing this substantial prejudice, the State offers little, if any, probative force of the evidence to counterbalance it. Simply put, this evidence is too unrelated to be a common scheme or plan. Additionally, at most, this inflammatory and highly prejudicial evidence would give little additional credence to A.M.'s explanations for her late disclosure.

When evaluating the evidence of prior sexual offenses under the Rule 403 balancing test, the district court acknowledged that this evidence is "*obviously, highly prejudicial* testimony under Rule 403"; yet, it later noted that it has "*some probative value*." (Emphasis added). Notwithstanding its own characterization of the evidence when ruling on Rule 403, the district court nonetheless concluded "that the prejudicial effect of this does not substantially outweigh the probative value." We conclude that given the lack of non-propensity probative force, the district court abused its discretion by failing to exercise reason in conducting the Rule 403 balancing test. Based on the record and the district court's own description of the evidence, the limited probative value of Leavitt's alleged statements of his sexual offenses was substantially outweighed by their "highly prejudicial" effect.

As noted above, the remaining statements that Leavitt had a "hit list," he "couldn't own a gun because he was a felon," and he was "not going back to prison" can be offered for the non-propensity purpose of lending credence to A.M.'s delay in her disclosure. At trial, the district court admitted the "hit list" statement and, despite ruling on the first day of trial that other statements should be "sanitized" and witnesses should refrain from references to Leavitt's prior incarceration, A.M. and R.S. both testified that Leavitt made the statement that he was a felon. Although we have concluded that such evidence was admissible under Rules 401 and 404(b), no Rule 403 balancing test was applied to determine whether the evidence was unfairly prejudicial. Since this determination traditionally falls within the discretion of the trial court, on remand we will leave it to the district court to determine whether the probative value of these statements—that (1) Leavitt had a "hit list," (2) he "couldn't own a gun because he was a felon," and (3) he was "not going back to prison"—is substantially outweighed by the danger of unfair prejudice under Rule 403.

**E. The admission of evidence concerning Leavitt's prior sex offenses was not harmless.**

"Under the harmless error test, if a defendant establishes the existence of an error, the burden shifts to the State to show beyond a reasonable doubt that the error complained of did not contribute to the verdict rendered, i.e., that the error was harmless." *State v. Roman-Lopez*, No. 49565, 2023 WL 1807021, at *7 (Idaho Feb. 8, 2023). "Harmless error is 'error unimportant when compared to everything else the jury considered on the issue in question, as revealed in the record.' " *State v. Garcia*, 166 Idaho 661, 674, 462 P.3d 1125, 1138 (2020) (quoting *Yates v. Evatt*, 500 U.S. 391, 403 (1991)). In *Garcia*, we clarified the analysis used to determine whether an error is harmless in Idaho. This two-part analysis requires "[1] weighing the probative force of the record as a whole while excluding the erroneous evidence and [2] at the same time comparing it against the probative force of the error." *Id.* If the *effect* of the error is minimal when compared to the probative force of the properly admitted evidence in the record establishing guilt beyond a reasonable doubt, then the error did not contribute to the verdict rendered. Accordingly, the error would be harmless. *Id.*

In its briefing, the State acknowledged that testimony from R.S.'s mother that R.S. told her that Leavitt "had been in prison for some time" and "she thought it had something to do with statutory rape" was improperly admitted and went beyond the district court's ruling about Leavitt's criminal history. However, the State does not concede that any other admission of Leavitt's criminal history from other witnesses was improper—the State only addressed the statements made by R.S.'s mother. The State asserts that "[c]omparing the probative force of the one statement from [R.S.' mother], against all the other properly admitted evidence in the record, shows the error was harmless." This was likely grounded on the State's view that the rest of the testimonial evidence at issue on appeal was properly admitted by the trial court. Consistent with that position, the State has made no harmless error argument regarding A.M.'s testimony and the testimony of R.S. regarding Leavitt's history of sex offenses—evidence which, as discussed above, was inadmissible as impermissible propensity evidence *and* under the Rule 403 balancing test.

Comparing the probative force of the properly admitted evidence in the record as a whole against the probative force of the erroneous admission of "highly prejudicial" testimony from two witnesses—R.S. and her mother—we cannot say that the effect of the error in this case is minimal. Thus, we conclude that the errors did contribute to the guilty verdict rendered below. Accordingly, we hold that the admission of such highly improper evidence was not, by any stretch of the imagination, harmless.

18

## IV. CONCLUSION

For the reasons set forth above, we conclude that the district court erred in admitting the testimony proffered on the second day of trial concerning Leavitt's prior criminal sexual offenses because it failed to find good cause for the State's late disclosure of this evidence, as required by Rule 404(b). Further, the district court erred in admitting that testimony because it was not offered for a valid, non-propensity purpose. We also conclude that the district court erred when it found that the probative value of Leavitt's prior criminal sexual offenses was not substantially outweighed by a danger of unfair prejudice pursuant to Rule 403. Inasmuch as we have concluded that these errors were not harmless beyond a reasonable doubt, we vacate Leavitt's judgment of conviction and remand this matter to the district court for further proceedings consistent with this opinion.

For purposes of remand, we note that we have affirmed the district court's conclusion that the disputed testimony proffered on the eve of trial—specifically, Leavitt's statements that (1) he had a "hit list," (2) he "couldn't own a gun because he was a felon," and (3) he was "not going back to prison"—was probative and admissible for a non-propensity purpose under Rules 401 and 404(b). However, on remand the district court must conduct a Rule 403 balancing test before admitting such testimony.

Justices BRODY, STEGNER, ZAHN and Justice Pro Tem BURDICK **CONCUR.**