IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 50683

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **Filed: December 8, 2025** |
| Plaintiff-Respondent, | ) | |
| | ) | **Melanie Gagnepain, Clerk** |
| v. | ) | |
| | ) | **THIS IS AN UNPUBLISHED** |
| ETHAN SETH ALMARAZ, | ) | **OPINION AND SHALL NOT** |
| | ) | **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Thomas W. Whitney, District Judge.

Judgment of conviction and aggregate unified sentence of life, with a minimum term of incarceration of thirty-two years, for first degree murder; aggravated battery; two counts of aggravated assault; and enhancements for use of a deadly weapon and intent to promote criminal gang activity, affirmed; order denying Idaho Criminal Rule 35(b) motion, affirmed.

Erik R. Lehtinen, State Appellate Public Defender; Elizabeth A. Allred and Jenny C. Swinford, Deputy Appellate Public Defenders, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Judge

Ethan Seth Almaraz appeals from his judgment of conviction for first degree murder with a gang enhancement, aggravated battery with a deadly weapon enhancement, and two counts of aggravated assault with deadly weapon enhancements. Ethan[1] argues the district court abused its discretion when it admitted testimony of a prior uncharged crime involving the theft of the gun

---

[1] This Court's opinions generally refer to parties and witnesses by their surnames. However, the appellant in this case shares the same surname with other witnesses and some witnesses also share surnames. For clarity, the Court will identify the appellant and those witnesses by their first names. No disrespect is intended by this designation.

used in the shooting and photographs of the tattoo on Ethan's hand. Ethan also argues the district court abused its discretion when it imposed an aggregate unified sentence of life, with a minimum period of incarceration of thirty-two years, and denied Ethan's Idaho Criminal Rule 35(b) motion. For the reasons set forth below, we affirm the district court.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

On the night of September 17, 2021, Jose Cuellar, Jr. drove with Ethan to pick up Jesus Almaraz to return to the house party Cuellar and Ethan had just left. When Jesus got into the vehicle, he saw a black Glock handgun with a flashlight attachment inside the back center console and began playing with the gun and flashing it around. During the drive, Ethan saw a group of individuals, later identified as Jose Hernandez, Axel Martinez, Michael Ozuna, and Izabella Lopez, walking down the street and believed them to be rival gang members. Ethan told Cuellar to turn the vehicle around; Ethan then told Jesus to, "[h]and me the strap," which Jesus understood to mean to hand Ethan the gun from the back center console. Jesus handed Ethan the gun and Ethan shot at the individuals. The shots wounded Martinez and killed Hernandez. Cuellar, Ethan, and Jesus drove away.

Ethan was indicted for first degree murder, Idaho Code §§ 18-4001, -4003(a)-(f); aggravated battery, I.C. §§ 18-903, -907(b); and two counts of aggravated assault, I.C. §§ 18-901, -905. The State filed a Part II to the indictment, alleging Ethan used a deadly weapon in the commission of the crimes, I.C. § 19-2520, and a Part III, alleging Ethan committed the crimes with the intent to promote criminal gang activity, I.C. § 18-8503(1)(b).

Prior to trial, Ethan filed a motion in limine pursuant to Idaho Rule of Evidence 403 seeking to exclude all evidence regarding a tattoo on Ethan's left hand depicting the phrase "Self-Made." At the hearing on the motion, Ethan argued the jury would have a negative bias against him for having the tattoo and the danger of unfair prejudice would outweigh any relevant purpose of identifying him as the shooter. The State argued it intended to present evidence of the tattoo only for identification purposes and the evidence would be more probative than prejudicial. The district court found that tattoos were common, did not carry the social stigma they once did, and many of the jurors might have tattoos. The district court further found that Ethan's hand tattoo was visible and, at some point during the trial, the jury would likely see Ethan's hands. The district court concluded the probative value of the evidence was not substantially outweighed by the danger of

2

unfair prejudice and denied Ethan's motion in limine, but to limit any potential prejudice, prohibited the State from presenting evidence that would explain the phrase "Self-Made."

The case proceeded to trial. Multiple witnesses testified but relevant here is the testimony of three witnesses: Jesus, Carrillo, and Cuellar. The only real issue in this case was the identity of the shooter. The State's theory was that Ethan was the shooter. In furtherance of that theory, the State elicited testimony from Jesus that he was a gang member, the gun was in the vehicle with Ethan before Jesus was picked up, Jesus was playing with the gun in the back seat but when Ethan said, "hand me the strap," Jesus handed Ethan the gun. According to Jesus's testimony, Ethan then fired several shots out of the front passenger window while yelling something about representing their gang and Ethan then took the gun with him when he was dropped off. Jesus also provided details of the shooting, including that Ethan was the shooter.

Ethan's defense strategy sought to shift blame away from himself and toward Jesus. Ethan's line of questioning during the cross-examination of Jesus, Carrillo, Cuellar, and a police officer sought to establish that Jesus possessed and controlled the gun before, during, and after the shooting, making it more likely that Jesus was the shooter, not Ethan. In furtherance of that theory, on cross-examination of Jesus, Ethan attempted to impeach Jesus's credibility. For example, Ethan elicited testimony that, the day after the shooting, Jesus, Ethan, Cuellar, Issac Bernal, and others attended a family barbecue. Jesus testified that at some point during that day, Ethan, Cuellar, Jesus, and two other individuals rode around in Bernal's vehicle and made Snapchat videos. In two separate videos, Jesus was filmed holding and flashing the gun used in the shooting. During his testimony, Jesus identified the gun he held in the Snapchat video as the gun used in the shooting. Jesus testified that, after filming the Snapchat videos, he kept the light attachment from the gun but did not keep the gun. Jesus also testified that approximately one month after the shooting, law enforcement served a search warrant on his residence. During the search, law enforcement found and seized the light that was attached to the gun used during the shooting.

Alejandro Carrillo, another gang member, also testified. On direct examination by the State, Carrillo testified that, shortly after the shooting, Ethan asked Carrillo to meet him near the College of Idaho. During this meeting, Ethan told Carrillo the following: Ethan saw some rival gang members while he was returning from a beer run with Cuellar and Jesus; Cuellar was the driver, Ethan sat in the front passenger seat, and Jesus sat in the back seat; upon seeing the individuals, they "flipped a bitch," which means they turned the vehicle around; Ethan began shooting at the individuals and saw two people "go down"; then Ethan, Cuellar, and Jesus drove

3

off. Carrillo testified that Ethan seemed "kind of happy" while recounting the story. Carrillo also testified that he saw Jesus with the gun at the house party earlier that night and believed the gun belonged to Jesus.

When Ethan cross-examined Carrillo, he generally attempted to impeach Carrillo's credibility by challenging whether Carrillo was drunk during the incident, Carrillo's absence during the shooting, Carrillo's inconsistent statements to law enforcement, and that Carrillo thought the gun used in the shooting belonged to Jesus.

On the morning of the third day of trial, in response to the testimony elicited from Jesus during cross-examination, the State filed a notice to present I.R.E. 404(b) evidence that Ethan stole a gun from a residence in March 2021, and the ballistics from the stolen gun matched the ballistics from the gun used in the shooting. The State indicated the details of the evidence, including the ballistics report, had been provided to Ethan in discovery. In response to the State's notice, Ethan filed a motion in limine to exclude the stolen gun evidence. The district court did not hear argument on the motion until later in the day.

In the meantime, on direct examination, Cuellar testified that immediately prior to the shooting he saw Jesus hand Ethan an unidentified object and after the shooting Cuellar dropped Ethan off near the College of Idaho. On cross-examination of Cuellar, Ethan attempted to impeach Cuellar's credibility. Specifically, Ethan elicited testimony from Cuellar that the gun was not in Cuellar's vehicle when he and Ethan picked up Jesus, and Jesus was seated in the front passenger seat. Cuellar also testified that Jesus: brought the gun with him that night; left with the gun after the shooting; brought the gun with him the next day to make the Snapchat videos; held onto the gun for a few weeks; and then got rid of the gun. On redirect examination, Cuellar testified that he did not witness Jesus bring the gun into the vehicle or get rid of the gun.

Later that day, when the district court heard argument on Ethan's motion in limine, Ethan objected to any reference to him stealing the gun, arguing the State's I.R.E. 404(b) notice was untimely, and the evidence was not relevant and was unfairly prejudicial. The State argued it learned of the theft allegation "late in the game" and, after investigating the allegation, disclosed Pierre Fray, the original owner of the gun, as a witness for rebuttal purposes should ownership of the gun become an issue. The State explained it intended to introduce evidence of the theft to address the credibility of its witnesses, particularly Jesus, which Ethan put at issue during cross-examination, and thus, the State should be permitted to rehabilitate Jesus. The State also argued

4

the evidence was relevant as it tied the gun to Ethan and showed he had power, control, and dominion over the gun, which would corroborate Jesus's testimony that the gun belonged to Ethan.

The district court found good cause for the lack of pretrial notice; found the gun theft evidence relevant as to knowledge, identity, and to bolster the credibility of Jesus and rebut Ethan's theory of defense; and denied Ethan's motion in limine and allowed the State to present evidence that Ethan had stolen the gun used in the shooting.[2]

The jury found Ethan guilty of first degree murder, aggravated battery, two counts of aggravated assault, and the deadly weapon and gang enhancements. After a two-day sentencing hearing, the district court imposed a unified life sentence, with a minimum period of incarceration of thirty-two years, for first degree murder as enhanced by intent to promote criminal gang activity; a unified sentence of sixteen years, with a minimum period of incarceration of seven years, for aggravated battery as enhanced by use of a deadly weapon; and a unified sentence of ten years, with a minimum period of incarceration of four years, for each aggravated assault conviction as enhanced by use of a deadly weapon. The district court ordered the sentences to run concurrently with each other. Subsequently, Ethan filed an I.C.R. 35(b) motion to reduce his sentence, which the district court denied. Ethan appeals.

## II.

## STANDARD OF REVIEW

Whether evidence is relevant is a question of law and is subject to de novo review. *State v. Leavitt*, 171 Idaho 757, 764, 525 P.3d 1150, 1157 (2023). Appellate courts review a trial court's evidentiary ruling under an abuse of discretion standard. *State v. Jones*, 167 Idaho 353, 358, 470 P.3d 1162, 1167 (2020). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

Sentencing is a matter for the trial court's discretion. Both our standard of review and the factors to be considered in evaluating the reasonableness of the sentence are well established and need not be repeated here. *See State v. Hernandez*, 121 Idaho 114, 117-18, 822 P.2d 1011, 1014-

---

[2] On appeal, Ethan does not challenge the admission of the testimony of Pierre Fray, Ryan Fray, or the ballistics expert.

15 (Ct. App. 1991); *State v. Lopez*, 106 Idaho 447, 449-51, 680 P.2d 869, 871-73 (Ct. App. 1984); *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Similarly, a motion for reduction of sentence under I.C.R. 35(b) is essentially a plea for leniency, addressed to the sound discretion of the court. *State v. Knighton*, 143 Idaho 318, 319, 144 P.3d 23, 24 (2006); *State v. Allbee*, 115 Idaho 845, 846, 771 P.2d 66, 67 (Ct. App. 1989).

## III.

## ANALYSIS

Ethan argues the district court abused its discretion when it admitted I.R.E. 404(b) evidence of the prior uncharged theft of the gun used in the shooting because the State's notice was untimely, the evidence was not relevant, and the probative value of the evidence was substantially outweighed by the danger of unfair prejudice under I.R.E. 403. Ethan also argues the district court abused its discretion when it admitted evidence of his hand tattoo depicting the words "Self-Made" because any slight probative value was substantially outweighed by the danger of unfair prejudice. Ethan further argues the errors taken individually or accumulated together deprived him of his right to a fair trial. Finally, Ethan argues the district court abused its discretion when it imposed an aggregate unified sentence of life, with a minimum period of incarceration of thirty-two years, contending the sentence is excessive, and when it denied his I.C.R. 35(b) motion to reduce his sentence. The State argues the district court did not abuse its discretion when it found: (1) good cause for the late disclosure of the I.R.E. 404(b) evidence; (2) the I.R.E. 404(b) evidence was relevant to demonstrate Ethan's ownership and dominion over the gun; and (3) the probative value of the I.R.E. 404(b) and tattoo evidence was not substantially outweighed by the danger of unfair prejudice. The State also argues any error was harmless and the district court did not abuse its discretion when it sentenced Ethan to a unified term of life with thirty-two years determinate and denied Ethan's I.C.R. 35(b) motion.

### A. Idaho Rule of Evidence 404(b)

Ethan argues the district court erred when it admitted evidence of the prior uncharged theft of the gun used in the shooting because the State failed to provide timely notice of its intent to present such evidence as required by I.R.E. 404(b), the evidence was not relevant to a material and disputed issue other than propensity, and any limited probative value of the evidence was substantially outweighed by the danger of unfair prejudice. The State argues the district court correctly found there was good cause for the late notice because the State was responding to Ethan's cross-examination of State witnesses, the evidence was relevant for purposes other than

6

propensity, and the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

### 1. Notice

Idaho Rule of Evidence 404(b) requires the State to file and serve reasonable notice of the general nature of the crime, wrong, or other act "reasonably in advance of trial--or during trial if the court, for good cause shown, excuses lack of pretrial notice." The rule encourages disclosure by the State and discourages trial by ambush. *Leavitt*, 171 Idaho at 765, 525 P.3d at 1158. Thus, compliance with the notice requirement is mandatory and a condition precedent to admission of I.R.E. 404(b) evidence at trial. *Leavitt*, 171 Idaho at 765, 525 P.3d at 1158.

When the State provides I.R.E. 404(b) notice during trial, it has the burden to establish good cause for the delayed notice. *Leavitt*, 171 Idaho at 766, 525 P.3d at 1159. Factors the district court might consider in determining whether there is good cause include the State's explanation of the circumstances leading to when the State learned of the I.R.E. 404(b) evidence, why it was not discovered sooner, or whether the State's witnesses had previously been questioned on the evidence it seeks to present. *Leavitt*, 171 Idaho at 766, 525 P.3d at 1159. The circumstances surrounding how the State discovered the I.R.E. 404(b) evidence is critical because it affects whether there was good cause for the late disclosure. *Leavitt*, 171 Idaho at 766, 525 P.3d at 1159. As an essential inquiry into the State's proffered reasons for the delayed disclosure, the district court must determine the specific facts and circumstances that caused the State to disclose its intent to present I.R.E. 404(b) evidence at that point in time. *Leavitt*, 171 Idaho at 766, 525 P.3d at 1159. The facts and circumstances leading to disclosure during trial can be the difference between good cause, negligent prosecutorial preparation, and intentional sandbagging. *Id.* At a minimum, the district court must properly consider all relevant facts and circumstances for the State's late disclosure and exercise reasoned discretion. *Id.* Once the State makes a showing of good cause and the district court finds good cause exists, the State's lack of pretrial notice in compliance with I.R.E. 404(b)(2)(B) is excused. *Leavitt*, 171 Idaho at 765-66, 525 P.3d at 1158-59. However, absent good cause for late disclosure shown by the State, the district court does not have discretion to admit the proffered I.R.E. 404(b) evidence. *Leavitt*, 171 Idaho at 765, 525 P.3d at 1158.

On the morning of the third day of trial, the State filed notice of its intent to present evidence that Ethan previously stole a gun and the ballistics from the stolen gun matched the ballistics from the murder weapon. Ethan argued the State's notice was untimely because the State had information about the alleged theft weeks before trial. Ethan also pointed out that, at the time

7

of the initial investigation into the shooting, there was a witness statement made by Ana Hernandez, Jesus's girlfriend, that the gun used in the shooting had been stolen. Ethan argued that Ana's statement was never followed up until right before the trial.

As to the timing of the disclosure during trial, the State argued it learned of the information only a few weeks before trial during an interview with Jesus. The State had not filed an I.R.E. 404(b) notice regarding Ethan's involvement in the theft because it did not intend to introduce the evidence in its case-in-chief, recognizing the discovery of the information a few weeks before trial was "late in the game." However, the State explained that, prior to trial, it filed an amended witness list to include Pierre and the investigator who followed up on the information learned in Jesus's interview regarding the stolen gun. The State further explained the reason it disclosed Pierre as a rebuttal witness was to put Ethan on notice that if ownership or possession of the gun became an issue, Pierre would be called as a witness to discuss ownership. The State argued that it filed the I.R.E. 404(b) notice after Ethan's cross-examination of Jesus, which sought to shift blame away from Ethan by implying Jesus possessed the gun before and after the shooting and Jesus was the shooter.

As to the content of the I.R.E. 404(b) evidence, the State proffered it would present evidence that in an interview with Jesus a few weeks before trial, Jesus stated that Ethan stole the gun from a house in Homedale. The State explained the investigator then found and followed up on a police report that identified Pierre as the victim of a burglary where several guns, including a Glock 17, were stolen and listed Ethan as a party of interest. The investigator contacted Pierre and asked if Pierre still had the fired test rounds that normally come with a gun. Pierre provided the investigator the factory fired shell casings on October 3, 2022. The next day, the investigator logged the two shell casings into evidence and requested they be sent to the Idaho State Police Laboratory to compare them to the shell casings found at the crime scene. After comparing the factory fired shell casings with the shell casings collected at the crime scene, the ballistics expert concluded the stolen Glock 17 was the same weapon used in the shooting.

The State indicated it would also call Ryan Fray, Pierre's son, who would testify that: (1) Ryan showed Ethan the combination and contents of Pierre's gun safe on the day the guns were stolen; (2) Ryan made plans to meet with Ethan later the same night, but Ethan never showed; and (3) when Ryan returned home, the guns were missing. The State also indicated it had subpoenaed Walter Almaraz, Ethan's brother, who would testify that Ethan and Ryan put the guns in the trunk

8

of Walter's vehicle, some of the stolen guns were later recovered from Walter's vehicle, and Walter had a pending plea agreement related to the theft.

Ethan argued the prior uncharged theft evidence was prejudicial because until a few weeks before trial, the evidence was "pretty much undisputed that the gun belonged to Jesus." Ethan also argued it was propensity evidence--that "the desire to take these types of items comes with the assumption that the taker of the items intends to use them, or is otherwise of violent character." If the evidence was admitted, Ethan argued the jury could infer that because Ethan "has shown a character for criminality related to violence in the past, he must have acted in a violent way on this particular occasion."

As to the timing of the disclosure, the district court found it was "reasonable for the [S]tate to not have planned originally to put this evidence on in its case-in-chief because the [S]tate--no [S]tate's attorney could anticipate the cross-examination done by defense counsel." The district court concluded it would not be fair to hold the State to "an impossible burden and provide every [I.R.E.]404(b) notice that could ever be given depending on what cross-examination were to take place." As to the content, the district court noted the point of the cross-examination of Jesus was to "challenge specifically whose gun was it in an attempt to shift blame away from [Ethan]" coupled with "questioning along the lines of from which seated position in the vehicle the gun was fired." The district court held that Ethan opened the door to the issue of identity of the shooter and the cross-examination impacted the credibility of Jesus, one of the State's most important witnesses. The district court also noted that Ethan asked Cuellar on cross-examination to comment on Jesus's credibility and stated, "So that door also has been opened wide, wide open, and it is fair for the [S]tate to be able to put on relevant evidence that rehabilitates the credibility of that witness." Ultimately, the district court found good cause to excuse the late disclosure pursuant to I.R.E. 404(b), denied Ethan's motion in limine, and permitted the State to present the evidence. The State then presented evidence consistent with its earlier proffer.

On appeal, Ethan again argues the State's I.R.E. 404(b) notice was untimely, and the State failed to establish good cause for the late notice. Ethan first argues that because there was one sentence in a witness statement dated October 13, 2021, that indicated the gun used in the shooting was stolen, the State could have discovered the evidence on that date. We disagree. Other than one sentence in one statement from the initial investigation, the State had no evidence that indicated Ethan stole the gun used in the shooting.

9

Ethan then argues the State knew on October 7, 2022, that the stolen gun and the murder weapon were one and the same when the ballistics expert released her report. The first day of trial was October 17, 2022. What the record reveals is that a few weeks before trial, when interviewing Jesus, the State learned additional information sufficient to prompt them to investigate Jesus's statement that Ethan stole the gun used in the shooting. It did so by first corroborating Jesus's story with a police report that detailed the theft and then by further investigation, which included a ballistics report that found the stolen gun was the gun used in the shooting. The State disclosed the information to Ethan through discovery and as found by the district court, the State did not intend to present the evidence absent Ethan's cross-examination of Jesus. Nothing in the record establishes the State could have or should have discovered Ethan's involvement in the theft earlier or that the failure to do so was based on an intent to obtain a trial advantage by "sandbagging."

Ethan further argues the district court erred in finding the State established good cause for the late notice because the issue of gun ownership did not come up during cross-examination of Jesus but during the State's direct examination of Carrillo regarding the gun's ownership. Thus, Ethan claims, the State put gun ownership at issue and cannot use that as a basis for the admission of evidence related to the theft of the gun. We disagree. The State made clear the notice was filed to rebut Jesus's testimony elicited on cross-examination by Ethan, not any subsequent testimony by Carrillo. Jesus testified before Carrillo, thus, the evidence that put ownership at issue was presented prior to Carrillo testifying. That the State elicited contradictory testimony from Carrillo on direct examination does not negate the State's interest in corroborating the earlier testimony of Jesus.

Ethan next argues that allowing the State to rehabilitate or impeach credibility is not "good cause" for late notice. Ethan cites to *State v. Clark*, 135 Idaho 255, 16 P.3d 931 (2000) in support of his argument. However, the issue in *Clark* was whether a good cause determination under I.C. § 19-3501 required an analysis of the *Barker v. Wingo*, 407 U.S. 514 (1972) factors. *Clark*, 135 Idaho at 258, 16 P.3d at 934. Ultimately, the Idaho Supreme Court held that in determining whether good cause for the delay of a trial was established pursuant to I.C. § 19-3501, the trial court may take into account the *Barker* factors, but they should only be considered as surrounding circumstances. *Clark*, 135 Idaho at 260, 16 P.3d at 936. Ethan does not explain how the definition of good cause used in analyzing an alleged violation of I.C. § 19-3501 is applicable in the context of I.R.E. 404(b).

10

We hold the district court did not abuse its discretion in finding good cause to excuse the delayed notice. As required by *Leavitt*, the State explained the circumstances leading up to when the State learned of the I.R.E. 404(b) evidence and why it was not discovered or disclosed sooner. *Leavitt*, 171 Idaho at 766, 525 P.3d at 1159. The State explained it did not know Ethan was involved in the theft of the gun until Jesus's statement a few weeks before trial, at which point the State located the police report and investigated the allegation. The State sought to introduce the evidence of the theft only after Ethan cross-examined Jesus, which put possession and control of the gun before and after the shooting at issue and implied that Jesus was the shooter. The State clarified the only purpose of introducing the evidence was "for rebuttal purposes because this has become an issue about credibility of our witnesses, and specifically the credibility of Jesus." The State further argued it should have the ability to rehabilitate Jesus and tying Ethan to the theft was relevant because it corroborated Jesus's testimony that the gun was Ethan's and demonstrated Ethan had dominion and control of the gun.

Consistent with *Leavitt*, the district court determined the specific facts and circumstances that caused the State to disclose its intent to present I.R.E. 404(b) evidence at the particular point in time the State filed the notice. *Leavitt*, 171 Idaho at 766, 525 P.3d at 1159. The district court concluded the State was permitted to introduce evidence that the gun was stolen, Ethan was involved in the theft, and, based on other evidence that had been timely disclosed, the stolen gun was the same gun used in the shooting. The district court did not abuse its discretion when it considered all the relevant circumstances and found the State established good cause to excuse the untimely filing of the I.R.E. 404(b) notice.

### 2.  Relevance

Ethan argues evidence of the uncharged theft of the gun was not relevant to a material and disputed issue of the charged crimes in this case other than propensity and any limited probative value of the evidence was substantially outweighed by its prejudicial effect. The State argues the evidence was relevant for non-propensity purposes to: (1) corroborate Jesus's testimony and establish that Ethan had possession and dominion over the gun; (2) rebut Ethan's defense theory that Jesus was the shooter; and (3) impeach Cuellar's testimony that Jesus possessed the gun before and after the shooting. The district court admitted the evidence of the prior theft on the grounds that it was proffered for non-propensity purposes and was relevant to knowledge, identity, to rebut Ethan's defense theory that Jesus was the shooter, and to bolster the credibility of Jesus.

The district court concluded that I.R.E. 404(b)(1) did not apply because the State was not introducing the evidence for propensity purposes, i.e., the State was not attempting to establish that because Ethan committed a previous theft, he also committed the crimes charged in this case. The district court found the evidence was admissible to establish knowledge and identity--two of the listed exceptions in I.R.E. 404(b)(2). The district court further found Ethan's involvement in the theft of the gun was relevant to rebut Ethan's defense theory that Jesus owned the gun and was the shooter and to corroborate or impeach various witness testimony.

On appeal, the State does not address whether the evidence is relevant to knowledge and identity. Instead, the State focuses its argument on whether the evidence of the prior theft was relevant to corroborate Jesus's testimony regarding ownership and control of the gun and to rebut Ethan's theory of defense--that Jesus owned the gun and possessed it immediately prior to the shooting. The State argues ownership mattered because Ethan sought to establish that Jesus possessed and controlled the gun before and after the shooting, which would make Jesus the more likely shooter.

Evidence that is relevant to a material issue concerning the crime charged is generally admissible. I.R.E. 401; *State v. Garcia*, 166 Idaho 661, 670, 462 P.3d 1125, 1134 (2019). Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. I.R.E. 401; *Garcia*, 166 Idaho 670, 462 P.3d at 1134. Whether an issue is relevant requires understanding those theories concerning the crime charged, the elements of that crime, and the ultimate issue that the jury is asked to determine. *State v. Ogden*, 171 Idaho 843, 857, 526 P.3d 1013, 1027 (2023). Whether a fact is of consequence or material is determined by its relationship to the legal theories presented by the parties. *State v. Johnson*, 148 Idaho 664, 671, 227 P.3d 918, 925 (2010). "The *Idaho Trial Handbook* observes that Idaho Rule of Evidence 401 'requires only minimal relevance, treating evidence as relevant if it has any tendency to make facts more or less probable.'" *Garcia*, 166 Idaho at, 671 n.3, 462 P.3d at 1135 n.3 (quoting D. CRAIG LEWIS, IDAHO TRIAL HANDBOOK § 13:1 (2d ed. 2005)).

Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. I.R.E 404(b)(1). Crimes, wrongs, or other acts include uncharged crimes. *State v. Cardoza*, 155 Idaho 889, 892, 318 P.3d 658, 661 (Ct. App. 2014); *State v. Bussard*, 114 Idaho 781, 785, 760 P.2d 1197, 1201 (Ct. App. 1988). However, this evidence may be admissible for another purpose,

12

such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of a mistake, or lack of accident. I.R.E. 404(b)(2). This is a non-exhaustive list, which allows for additional non-propensity reasons for presenting such evidence. *State v. Arledge*, 119 Idaho 584, 588, 808 P.2d 1329, 1333 (Ct. App. 1991). Grand theft of a firearm is a crime pursuant to I.C. § 18-2407(b)(6). Therefore, evidence of Ethan's involvement in the uncharged crime of stealing a gun falls into I.R.E. 404(b)'s crimes, wrongs, or other acts, which requires the State to show a non-propensity purpose for presenting such evidence. *State v. Grist*, 147 Idaho 49, 52, 205 P.3d 1185, 1188 (2009); *State v. Sheldon*, 145 Idaho 225, 229, 178 P.3d 28, 32 (2008).

The district court must engage in a two-tiered analysis to determine whether evidence of other crimes, wrongs, or acts is admissible pursuant to I.R.E. 404(b). *Leavitt*, 171 Idaho at 764, 525 P.3d at 1157. The first tier has two steps. *State v. Nava*, 166 Idaho 884, 893, 465 P.3d 1123, 1132 (2020). First, the trial court must determine whether there is sufficient evidence to establish the other crime or wrong as fact. *Leavitt*, 171 Idaho at 764, 525 P.3d at 1157. "Second, the trial court must determine whether the evidence of the other act would be relevant to a 'material and disputed issue concerning the crime charged, other than propensity.'" *Nava*, 166 Idaho at 893, 465 P.3d at 1132 (quoting *Grist*, 147 Idaho at 52, 205 P.3d at 1188). If the evidence of the other crime, wrong, or act is relevant, then the trial court must "engage in a balancing test" pursuant to I.R.E. 403 in the second tier. *Nava*, 166 Idaho at 893, 465 P.3d at 1132.

Ethan concedes there was sufficient evidence to establish he stole the gun used in the shooting. Thus, this Court must determine whether offering evidence of the uncharged theft is relevant to a material, non-propensity purpose. *Johnson*, 148 Idaho at 667, n.2, 227 P.3d at 921, n.2.

Ethan argues the list of non-propensity purposes that allow for the admission of prior act evidence provided in I.R.E. 404(b) does not include witness corroboration or rebuttal evidence. Ethan further argues the admission of evidence that he stole the gun is not relevant to who fired the shots from the gun. The State argues the list in I.R.E. 404(b) is non-exhaustive and the purpose in offering the gun theft evidence was to "tie Ethan Almaraz to the murder weapon and rebut the defense implication that Jesus was the immediate prior possessor of the gun."

The Idaho Supreme Court has held that I.R.E. 404(b) evidence is admissible to corroborate and impeach witness testimony. For example, in *Grist*, the Supreme Court acknowledged corroborating testimony may be admissible pursuant to I.R.E. 404(b):

13

Although we can envision instances in which evidence of uncharged misconduct will tend to reinforce the credibility of a witness without reliance on the impermissible theory of the defendant's propensity to engage in such misconduct, we will not attempt to identify all circumstances in which such evidence properly may be admitted. Rather, we will identify the instance in which such evidence may not be admitted: Evidence of uncharged misconduct may not be admitted pursuant to I.R.E. 404(b) when its probative value is entirely dependent upon its tendency to demonstrate the defendant's propensity to engage in such behavior.

*Grist*, 147 Idaho at 54, 205 P.3d at 1190.

In *Arledge*, this Court held the exceptions listed in I.R.E. 404(b) are non-exhaustive. *Arledge*, 119 Idaho at 588, 808 P.2d at 1333. The issue in *Arledge* was whether I.R.E. 404(b) evidence could be used to impeach a witness. There, the State introduced evidence to impeach a witness's statement regarding when Arledge had been released from jail and how long he lived at a residence. *Arledge*, 119 Idaho at 587, 808 P.2d at 1332. On cross-examination, the witness testified that Arledge had been staying at the residence in question "[a]bout two days" prior to the incident. *Id*. The State sought to introduce the witness's written statement signed the day after the incident, which included the following sentence: "[Arledge] had gotten out of jail yesterday (3-13-89/Monday) & I had picked him and brought him here . . . where we have been residing." *Id*. The State offered the written statement into evidence as a prior inconsistent statement for purposes of impeaching the defense witness. *Id*.

Arledge objected and sought to exclude the phrase "[Arledge] had gotten out of jail yesterday" because none of the I.R.E. 404(b) provisions permitted the statement to be admitted, the statement did not contradict the witness's trial testimony, and the probative value was substantially outweighed by the prejudicial effect. *Id*. The district court admitted the statement and Arledge appealed. *Id.*

On appeal, this Court noted that evidence offered for impeachment purposes is a permissible category not listed in I.R.E. 404(b). *Arledge*, 119 Idaho at 588, 808 P.2d at 1333. We held that while I.R.E. 404(b) "does not specifically authorize the statement to be used for impeachment purposes, neither does the rule prohibit such use." *Arledge*, 119 Idaho at 588, 808 P.2d at 1333. This Court reasoned that, "whenever evidence is introduced for purposes of impeachment, it necessarily involves a witness's credibility, and credibility is always relevant." *Id*.

This Court has also held that evidence proffered to rebut a theory of defense may be admitted pursuant to I.R.E. 404(b). In *State v. Whipple*, 134 Idaho 498, 500, 5 P.3d 478, 480 (Ct.

14

App. 2000), Whipple was charged with first degree murder of his wife. Whipple's theory of defense was that he was not capable of premeditation due to post-traumatic stress disorder with attendant dissociative episodes and intermittent explosive disorder. *Id.* at 500-01, 5 P.3d 480-81. Whipple called two experts to testify about his mental status at the time of the murder to support his theory. *Id.* at 501, 5 P.3d at 481. In rebuttal, the State called a member of the local school board to testify about prior threats Whipple made and called Whipple's oldest daughter to testify about Whipple's abuse of her, other family members, and pets, to illustrate Whipple's ability to premeditate and inflict violence on others. *Id.* Whipple objected, arguing the evidence was inadmissible under I.R.E. 404(b) and 403. *Id.* This Court reasoned:

> A theory that premeditated or conscious acts in the past make the fact of premeditation or conscious acting in this case more likely than such would be without that evidence treads dangerously close to propensity evidence prohibited by I.R.E. 404(b). However, that line was not crossed in this case because the purpose of the testimony was *rebuttal* to Whipple's non-volition defense, not propensity. Furthermore, Whipple's defense--that he had a long history of mental problems and that the killing of [his wife] occurred in a blind rage or blackout state-set the standard by which the testimony of [the school board member and Whipple's daughter] was to be judged. We conclude that the trial court did not abuse its discretion in admitting this evidence under I.R.E. 403.

*Whipple*, 134 Idaho at 505, 5 P.3d at 485.

A similar result was reached in *State v. Osterhoudt*, 155 Idaho 867, 318 P.3d 636 (Ct. App. 2013). In *Osterhoudt*, this Court affirmed a district court's ruling that evidence of a prior bad act was admissible to rebut a claim of recent fabrication. *Id.* at 873-74, 318 P.3d 642-43. Osterhoudt's theory of defense was that the victim had a motive to fabricate the charges in order to continue to see her boyfriend, which Osterhoudt had forbidden. *Id.* at 873, 318 P.3d at 642. The State sought to admit I.R.E. 404(b) evidence that the victim disclosed a prior incident of sexual abuse by Osterhoudt approximately ten years prior to the instant offense. *Id.* This Court held the victim's prior disclosure "directly [rebutted]" Whipple's theory that the victim had recently fabricated the allegations, and thus, was relevant. *Id.* at 874, 318 P.3d at 643. We also held that even if the evidence was improperly admitted to rebut Whipple's theory of defense, the evidence was relevant to corroborate the testimony of the detective who testified that the victim had previously disclosed an allegation of sexual abuse. *Id.* We reiterated that a witness's credibility is always relevant. *Id.* Thus, because the list of examples in I.R.E. 404(b) is non-exhaustive, the fact that witness corroboration or rebutting a defense theory are not on that list does not preclude the admission of such evidence when used for that purpose.

As stated above, the only real issue in this case was the identity of the shooter. The State's theory was that Ethan was the shooter. In furtherance of that theory, the State elicited testimony from Jesus that the gun was in the vehicle with Ethan before Jesus was picked up. As discussed above, Jesus was playing with the gun in the back seat, but when Ethan said, "hand me the strap," Jesus handed Ethan the gun. According to Jesus's testimony, Ethan then fired several shots out of the front passenger window while yelling something about representing their gang and when Ethan was dropped off, Ethan took the gun with him. Carrillo testified on direct examination that, after the shooting, while recounting the events of the night, Ethan admitted to being the shooter and told Carrillo that Jesus was in the back seat of the vehicle. However, Carrillo also testified that Jesus had the gun at the house party prior to the shooting and Carrillo had never seen Ethan with the gun and believed the gun belonged to Jesus.

Ethan's defense strategy sought to shift blame away from himself and toward Jesus. Ethan's line of questioning during the cross-examination of Jesus, Carrillo, Cuellar, and a police officer sought to establish that Jesus possessed and controlled the gun before, during, and after the shooting, making it more likely that Jesus, not Ethan, was the shooter. To support that theory, during cross-examination of Jesus, Ethan elicited testimony that Jesus handled the gun while making Snapchat videos the day after the shooting. During his testimony, Jesus identified the gun he held in the Snapchat video as the gun used in the shooting. Ethan also attempted to tie Jesus to the gun when he cross-examined the officer who executed the search warrant at Jesus's residence and implied that law enforcement believed Jesus possessed the weapon. Furthermore, Ethan elicited testimony from Jesus and from the officer that the light previously attached to the gun was found in Jesus's residence by law enforcement.

When Ethan cross-examined Carrillo, he generally attempted to impeach Carrillo's credibility by challenging whether Carrillo was drunk during the incident, Carrillo's absence during the shooting, Carrillo's inconsistent statements to law enforcement, and that Carrillo thought the gun used in the shooting belonged to Jesus.

Ethan elicited testimony from Cuellar on cross-examination that implied Jesus lied about some topics; Jesus possessed the gun before, during, and after the shooting; and Jesus sat in the front passenger seat of the vehicle during the shooting. The seating location was important because the testimony showed the shots were fired from the front passenger seat. Although Ethan disputes that he opened the door to the question of gun ownership, the district court found otherwise and evidence in the record supports that finding.

16

Ethan also elicited testimony from Cuellar that Jesus brought the gun with him when he was picked up to go to the party even though Cuellar did not see Jesus bring the gun into the vehicle. Cuellar further testified that Jesus left with the gun after the shooting, brought the gun with him the next day when they made the Snapchat videos, and held onto the gun for some time after that. Ethan specifically attacked Jesus's credibility through Cuellar:

DEFENSE: And for [Jesus] to come in and say I don't have any beef with [rival gang] that was a lie. Right?
CUELLAR: Yes.
. . . .
DEFENSE: Jesus left with the gun. Right?
CUELLAR: Correct.
DEFENSE: Okay. Jesus brought the gun that night. Right?
CUELLAR: Correct.
DEFENSE: Okay. And the next day Jesus brought the gun into the car. Correct?
CUELLAR: Correct.
. . . .
DEFENSE: So you saw the gun at the house afterwards, right, Jesus's gun?
CUELLAR: Yes.
DEFENSE: Okay. So if [Jesus] said that he didn't take it home with him, that would be a lie. Right?
CUELLAR: Yes.

Thus, through the cross-examination of Jesus, Carrillo, and Cuellar, Ethan attempted to show that Jesus was a liar (with the implication that Jesus was not to be believed when he testified that Ethan was the shooter); Jesus possessed the gun before and after the shooting; and it was more likely that Jesus was the shooter.

The district court found the reason for the admission of the evidence was to corroborate Jesus's testimony that Ethan possessed the gun before, during, and after the shooting, and to rebut the defense's theory and implication that Jesus was the immediate prior possessor of the gun. The evidence was relevant for both purposes and, therefore, was not prohibited by exclusion of propensity evidence pursuant to I.R.E. 404(b).

Ethan challenged the credibility of Jesus, Carrillo, and Cuellar, and the State was not precluded from introducing evidence to bolster the witnesses' credibility with the evidence that Ethan stole the gun a few months earlier. For example, evidence that Ethan stole the gun corroborates Jesus's testimony that the gun was already in the vehicle when he was picked up and that Ethan demanded Jesus hand him the gun. Evidence of the theft and Ethan's possessory control of the gun explains why Jesus complied with Ethan's demand to hand him the gun, despite Jesus handling the gun before Ethan's request was made. The same evidence further corroborates

17

Carrillo's testimony that Ethan confessed to being the shooter and corroborates Cuellar's testimony that Cuellar saw Jesus hand something to Ethan immediately before hearing gunshots. Evidence of the prior gun theft makes a fact at issue--who was the most likely shooter--more or less relevant through the corroboration of Jesus, Carrillo, and Cuellar.

Additionally, the evidence of the gun theft was generally used to rebut Ethan's theory that Jesus possessed the gun before, during, and after the shooting, making it more likely that Jesus, rather than Ethan was the shooter. The evidence was used more specifically to rebut Carrillo's testimony that the gun belonged to Jesus and to rebut Cuellar's testimony that Jesus brought the gun with him to the vehicle instead of the gun already being in the vehicle.

Evidence that Ethan stole the gun used in this case was relevant to corroborate Jesus's, Cuellar's, and Carrillo's testimony, and to impeach parts of Cuellar's and Carrillo's testimony, and to rebut the defense's theory, which are permitted uses under I.R.E. 404(b). The evidence helped the jury assess the credibility of the witnesses and credibility is always relevant. Therefore, the district court did not err in finding the prior uncharged theft of the gun was relevant in the context of this case.

### 3.     Balancing test

Ethan argues the district court did not exercise reason when it concluded that under I.R.E. 403, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. The State argues the district court properly concluded the probative value of the evidence was not substantially outweighed by unfair prejudice.

Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. I.R.E. 403. The trial court must measure the probative worth of the proffered evidence by focusing on the degree of relevance, its materiality, and its need to be introduced on the presented issue. *Jones*, 167 Idaho at 360, 470 P.3d at 1169. The trial court must also consider whether the evidence will be given undue weight resulting in an inequity or some illegitimate persuasion amounting to unfair prejudice. *Id.* The trial court may use its discretion to properly admit or exclude the proffered evidence after weighing its probative value against the risk of unfair prejudice. *Id.* at 360-61, 470 P.3d at 1169-70. The trial court's I.R.E. 403 determination will not be disturbed on appeal unless it is shown to be an abuse of discretion. *State v. Russo*, 157 Idaho 299, 309, 336 P.3d 232, 242 (2014).

The district court correctly perceived the admissibility of the evidence of the gun theft as a matter within its discretion. After quoting I.R.E. 403, the district court noted the boundaries of its

discretion, reiterating the legal standard for the admission of the evidence. The district court considered the quantum of evidence that would be presented and the number of witnesses who would testify on the issue. The district court found the evidence the State sought to present was straightforward and there was little likelihood the jury would confuse guilt of the gun theft with guilt of committing murder. The district court also specifically found the evidence would not mislead the jury, cause undue delay, waste time, and was not a needless presentation of cumulative evidence. To limit any unduly prejudicial effect, the district court prohibited the State from eliciting testimony regarding Ethan's custody status when law enforcement questioned him about the stolen gun. Acting within the boundaries of its discretion and consistently with the legal standards applicable to it, the district court found the probative value of the prior gun theft was not substantially outweighed by the I.R.E. 403 considerations. The district court explained its analysis and reached its decision by an exercise of reason. As a result, the district court did not abuse its discretion by allowing the State to present the gun theft evidence to show that Ethan had possession of the gun during the shooting.

**B.**     **The District Court did not Abuse its Discretion when it Admitted Evidence of Ethan's "Self-Made" Hand Tattoo**

Ethan argues the district court abused its discretion when it admitted two photographs of a tattoo on Ethan's left hand that reads "Self-Made" because any slight probative value was substantially outweighed by the danger of unfair prejudice. The State argues the district court did not abuse its discretion when it admitted the photographs because the hand tattoo provided clear, objective evidence of Ethan's identity and the danger of unfair prejudice was limited as no evidence was presented that explained the meaning of the tattoo. Prior to trial, at the hearing on Ethan's motion in limine to exclude evidence of his hand tattoo, the district court found the "Self-Made" tattoo on Ethan's left hand was relevant to establish identity and held the probative value was not substantially outweighed by unfair prejudice or any of the other I.R.E. 403 factors, in part, because the jurors would likely "see a tattoo on his hand at some point during his trial."

As discussed above, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. I.R.E. 403. At the pretrial motion hearing, the district court considered Ethan's argument that the photographs were unfairly prejudicial because "people have strong opinions regarding tattoos." The district court found that tattoos do not "carry the social stigma they did at one point long ago" and many of the jurors would likely have tattoos, which diminished the likelihood of any unfair prejudice inuring to Ethan. Furthermore, the district court found Ethan would still have the tattoo during the trial, which would

allow the jurors to see the tattoo on his left hand throughout the entire trial. Thus, the prejudicial effect of the jury seeing an exhibit that displayed the tattoo when the jury could observe the tattoo on Ethan's hand at any point during the trial was slight. To limit any potential prejudice, the district court prohibited the State from presenting any evidence regarding the meaning of the tattoo.

Ethan argues "a tattoo of this design, color, and size invited the jury to speculate that [he] was involved in illegal activity. It was, for lack of a better phrase, a criminal tattoo." Ethan also argues, "[the tattoo] conveys that [he], although a minor, is already the type of criminal that would commit serious crimes--like those for which he stood trial." This is Ethan's subjective characterization of the tattoo and there is no support in or citation to the record for Ethan's opinion; no evidence was presented about when Ethan got the tattoo, the meaning of the tattoo, or how the jury might perceive the tattoo specifically. Thus, the district court did not err when it concluded the probative value of the two photographs were not significantly outweighed by the danger of unfair prejudice.

## C. Cumulative Error Doctrine does not Apply Because Ethan has Failed to Demonstrate the District Court Erred

Finally, Ethan contends that the cumulative error doctrine applies here, necessitating a reversal of his conviction. Under the doctrine of cumulative error, a series of errors, harmless in and of themselves, may in the aggregate show the absence of a fair trial. *State v. Adamcik*, 152 Idaho 445, 483, 272 P.3d 417, 455 (2012). However, a necessary predicate to the application of the doctrine is a finding of more than one error. *Id*. Ethan has failed to demonstrate any error. As such, the cumulative error doctrine does not apply.

## D. The District Court did not Abuse its Discretion when it Imposed a Unified Aggregate Sentence of Life with Thirty-Two Years Determinate

The district court imposed an aggregate unified sentence of life, with a minimum period of incarceration of thirty-two years. Ethan argues the district court did not exercise reason and, thus, abused its discretion when it imposed an excessive sentence because the district court did not consider Ethan's mitigating factors including his difficult childhood, young age, and supportive family and friends. The State responds by arguing that the district court expressly stated that it had considered the facts presented at trial, the presentence investigation report, the numerous letters supporting Almaraz, the victim impact statements, and the appropriate factors set forth in I.C. §§ 19-2521 and 19-2601, and then methodically analyzed and applied the relevant sentencing factors and discussed the mitigating and aggravating circumstances. The State argues that after

20

considering the nature of Ethan's crimes and the danger he poses to the community, the district court acted within its sentencing discretion and applied reason in imposing the sentence.

When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007). Our role is limited to determining whether reasonable minds could reach the same conclusion as the district court. *State v. Biggs*, 168 Idaho 112, 116, 480 P.3d 150, 154 (Ct. App. 2020).

Applying these standards, and having reviewed the record in this case, we cannot say that the district court abused its discretion. Therefore, Ethan's judgment of conviction and sentences are affirmed.

**E.     The District Court did not Abuse its Discretion when it Denied Ethan's Idaho Criminal Rule 35(b) Motion**

Ethan argues the district court did not exercise reason and therefore abused its discretion when it denied Ethan's I.C.R. 35(b) motion. The State argues Ethan did not present any new information in support of his motion that rendered the district court's sentencing determination excessive and, therefore, failed to demonstrate the district court abused its discretion.

In presenting an I.C.R. 35(b) motion, the defendant must show that the sentence is excessive in light of new or additional information subsequently provided to the district court in support of the motion. *State v. Huffman*, 144 Idaho 201, 203, 159 P.3d 838, 840 (2007). Upon review of the record, including any new information submitted with Ethan's I.C.R. 35(b) motion, we conclude no abuse of discretion has been shown. Therefore, the district court's order denying Ethan's I.C.R. 35(b) motion is affirmed.

**IV.**

**CONCLUSION**

Ethan has failed to show the district court erred when it admitted testimony of an uncharged crime involving the theft of the gun used in the shooting. Ethan has also failed to show the district court erred when it admitted photographs of his hand tattoo. Furthermore, Ethan has failed to show the district court abused its discretion when it imposed a unified aggregate sentence of life with thirty-two years determinate and when it denied his I.C.R. 35(b) motion. Therefore, Ethan's judgment of conviction and sentences, and the district court's order denying Ethan's I.C.R. 35(b) motion are affirmed.

Judge LORELLO and Judge Pro Tem MELANSON, **CONCUR**.

21